This case involves the interpretation and application of the Alabama Automobile Dealer Bond Statute, § 40-12-398, Ala. Code 1975.
Auction Way Sales, Inc. ("Auction Way"), a wholesale automobile dealer located in Chicago, Illinois, sued Ricky Harrell, individually and d/b/a Double Diamond Motors, and Old Republic Surety Company ("Old Republic"), alleging a breach of contract in the nonpayment for eight automobiles sold to Harrell at an Illinois auction. Harrell is a licensed Alabama automobile dealer. Old Republic, a Wisconsin stock insurance corporation licensed to do business in Alabama, issued *Page 879 
its initial "bond of used motor vehicle dealer" to Harrell, pursuant to § 40-12-398, covering a license period of January 24, 1995, to September 30, 1995. Old Republic renewed the bond, to be in effect until September 30, 1996. The transaction that is the subject of this action occurred in April 1996, during the effective term of this bond.
Auction Way conducts wholesale automobile auctions, selling exclusively to registered automobile dealers. On January 23, 1996, Harrell had registered to transact business at an auction sponsored by Auction Way. In April 1996, Harrell purchased from Auction Way eight automobiles worth approximately $47,000. Harrell had paid with checks and drafts, which were later returned because of insufficient funds; Harrell never made good those returned checks and drafts.
On July 26, 1996, Auction Way sued, alleging that Harrell had intentionally defrauded it and had breached a contract between the parties, and seeking a judgment and enforcement of the surety bond.
In December 1996, Old Republic moved for a summary judgment, contending that the Alabama Automobile Dealer Bond Statute, § 40-12-398, Ala. Code 1975, was limited to transactions occurring in Alabama and, therefore, could not have extraterritorial application. In January 1997, Auction Way moved for a summary judgment, arguing that Old Republic, as surety, must indemnify, because, Auction Way contends, Harrell's automobile dealer's bond was in effect at the time of the April 1996 transactions. Additionally, Auction Way argued that under the doctrine of comity an obligation under a statute should follow its principal, thereby giving § 40-12-398 extraterritorial effect.
The trial court, on March 13, 1997, entered a summary judgment in favor of Auction Way, holding that when an aggrieved party has recovered a judgment for any loss, § 40-12-398 dictates that the surety indemnify. The court stated:
 "To hold that a bond, conditioned upon the legal activities of an Alabama automobile dealer, is limited to only transactions within the State of Alabama ignores the everyday travel and ease of interstate and even international business. The statute does not speak to territory, neither limiting nor allowing. It would appear, however, that the State of Alabama would have an interest in the prevention of fraud committed by Alabama Dealers."
On April 10, 1997, Auction Way obtained a valid default judgment against Harrell, individually and d/b/a Double Diamond Motors, in the sum of $49,931.30, plus costs. Old Republic appealed. This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala. Code 1975.
Old Republic argues that the court erred in its interpretation and application of § 40-12-398, which provides:
 § 40-12-398. Bond prerequisite to issuance of license.
 "Annually, before any license shall be issued to a new motor vehicle dealer, used motor vehicle dealer, motor vehicle reconditioner, motor vehicle rebuilder, or motor vehicle wholesaler, the applicant shall either deliver to the commissioner a good and sufficient surety bond, executed by the applicant as principal and by a corporate surety company qualified to do business in the state as surety, in the sum of $25,000 for a new motor vehicle dealer and $10,000 for all other dealers. Such bond shall be in a form to be approved by the commissioner, and shall be conditioned that the motor vehicle dealer, motor vehicle reconditioner, motor vehicle rebuilder, or motor vehicle wholesaler shall comply with the conditions of any contract made by such dealer in connection with the sale or exchange of any motor vehicle and shall not violate any of the provisions of law relating to the conduct of the business for which he is licensed. Such bond shall be payable to the commissioner *Page 880 
and to his successors in office, and shall be in favor of any person who shall recover any judgment for any loss as a result of any violation of the conditions hereinabove contained. Such bond shall be for the license period, and a new bond or proper continuation certificate shall be delivered to the commissioner at the beginning of each license period; provided, that the aggregate liability of the surety in any one license year shall, in no event, exceed the sum of such bond. The provisions of this section shall not apply to motor vehicle dealers or wholesalers who hold a valid motor vehicle dealer license under Section 40-12-51 or to motor vehicle rebuilders or reconditioners, as defined in this article who hold a valid business license to engage in such business as of April 1, 1978."
The statute is silent as to whether it applies outside the territorial jurisdiction of Alabama; therefore, in our review, we must rely on the cardinal rule of statutory interpretation: to determine and give effect to the intent of the legislature as manifested in the language of the statute. Ex parte State Dep't ofRevenue, 683 So.2d 980, 983 (Ala. 1996). "The legislature's intent may be discerned from the language of the act, the reason and necessity for the act, and the goal sought to be obtained."Hines v. Riverside Chevrolet-Olds, Inc., 655 So.2d 909, 924 (Ala. 1994). Further,
 "Absent a clearly expressed legislative intent to the contrary, the language of the statute is conclusive. Words must be given their natural, ordinary, commonly understood meaning, and where plain language is used, the court is bound to interpret that language to mean exactly what it says."
Ex parte State Dep't of Revenue, supra, at 983.
Old Republic contends that even if the statute is determined to have extraterritorial application, wholesalers, like Auction Way, are not members of the class of persons that the statute was designed to protect. Auction Way contends that Old Republic, because it did not raise this issue with the trial court, is now precluded from raising it on appeal.
It is well established that this court is limited to a review of the record and the issues raised therein and that it was precluded from considering issues raised for the first time on appeal. Merritt v. Wayne Gargus Pontiac-GMC Truck, Inc.,686 So.2d 340, 342 (Ala.Civ.App. 1996). We note that Old Republic did not make this contention in the trial court in its initial cross-claim or in its summary judgment motion and brief. Additionally, there is no indication in the record that the issue regarding the class of persons who may seek a remedy under the statute was presented for the trial court's determination. However, considering the task assigned to this court in interpreting the scope of § 40-12-398, we agree with Old Republic's contention that a determination and definition of the class of persons who may seek remedy under the statute is germane to our discussion here.[1]
A fair reading of § 40-12-398 emphasizes the requirement that an automobile dealer have a bond before doing business in the State of Alabama. There is no language in the statute that would limit the bond's application to Alabama's borders. The mere requirement of a bond by no means prescribes territorial limitations on its availability nor does it require the *Page 881 
bond to be universal. South Seattle Auto Auction, Inc. v. WesternCasualty Surety Co., 41 Or. App. 707, 711, 598 P.2d 1269, 1272
(1979). A broad construction of the statute in favor of those whom the statute was designed to protect and against the fraudulent dealer and surety is merited. As the Kansas Court of Appeals noted: "The Court of Appeals of Oregon has declared that a statute requiring motor vehicle dealers to be bonded `is remedial for protection of persons injured by a bonded party. It should be liberally construed to accomplish its purpose.'" Nicklin v.Harper, 18 Dan. App. 2d 760, 769, 860 P.2d 31, 38 (1993) (citingGeneral Electric Credit Corp. v. United Pac. Ins. Co.,80 Or. App. 129, 135, 722 P.2d 15, 19 (1986)).
We conclude that the legislature intended for the bond requirement of § 40-12-398 to serve as a remedy for any person who recovers any judgment as a result of any violation of the conditions pertaining to the initial granting of the license. The statute creates a cause of action in favor of "any person who shall recover any judgment for any loss as a result of any violation of the conditions hereinabove contained." § 40-12-398, Ala. Code 1975. This includes in-state and out-of-state persons, but excludes manufacturers who buy from, trade with, or otherwise do business with licensed Alabama automobile dealers. See Lawrence v. Ward,300 P.2d 619 (Utah 1956); Ferris v. Haymore, 967 F.2d 946 (4th Cir. 1992); American European Garage Services, Inc. v. NationalFire Ins. Co. of Hartford, 427 So.2d 772 (Fla.App. 1983). Further, considering the circumstances and the general transitory nature of bonds and bond statutes, the relief granted here is not unjust, absurd, or unreasonable. See generally 12 Am. Jur. 2d,Bills and Notes § 36 (1997).
There being no issue in dispute, the summary judgment in favor of Auction Way is affirmed. Bussey v. John Deere Co.,531 So.2d 860, 862 (Ala. 1988); Rule 56(c), Ala. R. Civ. P.
AFFIRMED.
ROBERTSON, P.J., and MONROE and CRAWLEY, JJ., concur.
THOMPSON, J., concurs in the result.
[1] We note that this is a case of first impression in Alabama and that the legislative statement and history of this statute do not provide any guidance for the courts. Jurisdictions that have had the opportunity to address the extraterritorial effect of surety bond statutes are divided. See, e.g., Mawyer v. LumbermansMutual Casualty Co., 237 Va. 299, 377 S.E.2d 401 (1989); SouthSeattle Auto Auction, Inc. v. Western Casualty Surety Co.,41 Or. App. 707, 598 P.2d 1269 (1979); Price v. Piotrowski,632 So.2d 1 (La.App. 1994); Mid-State Auto Auction of Lexington,Inc. v. Altman, 324 S.C. 65, 476 S.E.2d 690 (1996).